## Thomas v. Southeastern Pennsylvania Transportation Authority

*Bernard M. Gross*, for plaintiff.
*Stuart Schwartz*, for defendant.

BULLOCK, *J.*, October 8, 1979—At a pretrial conference on June 6, 1979, with respect to the above cases, which have been consolidated for disposition, counsel raised certain issues, set forth below, on the application of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101. For purposes of consideration of these issues, counsel entered into a stipulation of facts, a copy of which is attached to the original of this memorandum and order and marked Exhibit A.

Plaintiff herein, on August 10, 1976, filed a trespass and assumpsit action claiming damages as a result of an accident which occurred on July 21, 1975. (We shall hereafter refer to this as the 1976 action.) Defendant filed an answer and included in new matter the following paragraph:

"17. Pursuant to the No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, 40 P.S. Section 1009.101 et seq, plaintiff is precluded from or limited in maintaining this action since tort liability is abolished with respect to any injury that takes place in the Commonwealth of Pennsylvania in accordance with the provisions of said Act if such injury arises out of the maintenance or use of a motor vehicle."

Plaintiff in turn replied: "17. Denied. This is a conclusion of law and strict proof of said allegation is hereby demanded."

On July 22, 1975, plaintiff's counsel first advised defendant he was making a claim for personal injuries arising from an accident on July 21, 1975, when plaintiff, while a passenger on one of defendant's buses, was struck by a cover of the center door mechanism. It will be noted that the accident occurred just two days after the effective date of the No-fault Act. Plaintiff's claim letter made no reference to the No-fault Act and did not purport to demand no-fault payments. On June 4, 1976, in a telephone conversation between plaintiff's counsel and a representative of defendant, the no-fault law was first mentioned and defendant agreed to send no-fault claim forms to plaintiff. Despite these requests, the forms were not sent until July 7, 1976. In the meantime, also on July 7, 1976, plaintiff sent defendant a letter setting forth medical expenses and loss of earnings, attaching medical reports and making a settlement demand of $35,000. No reference was made to a no-fault claim. Thereafter, plaintiff never submitted the forms and defendant never considered any no-fault claim for plaintiff or made any payments.

On May 2, 1979, plaintiff filed a second suit in assumpsit claiming benefits under the No-fault Act only. (We shall hereafter refer to this as the 1979 action.) Defendant filed an answer and included as new matter the following paragraphs:

"9. Section 106(c)(1) of the Pennsylvania No-Fault Motor Vehicle Insurance Act, Act No. 176, July 19, 1974, 40 P.S. 1009.106(c)(1) provides that where no-fault benefits have not been paid for loss arising otherwise than from death, an action for such benefits must be commenced within 2 years of the date of the loss.

"10. All of the losses of which plaintiff complains were suffered and sustained more than 2 years prior to May 2, 1979, the date of the commencement of this action, and this action is therefore banned by the terms of Section 106(c)(1) as aforesaid."

Plaintiff, in turn, responded: "9. Denied. This is an issue of fact for the jury for which strict proof is required at time of trial. 10. Admitted that all of the losses were suffered more than two years prior to May 2, 1979. That does not mean that this suit is banned and strict proof of SEPTA's allegations are hereby demanded."

It is the contention of defendant that plaintiff may not offer evidence in the 1976 action as to items payable under the No-fault Act. It is defendant's further contention that plaintiff may not pursue no-fault benefits under the 1979 action, since the suit is barred by the statute of limitations in the No-fault Act.

The pleadings in the 1976 action clearly placed plaintiff on notice that defendant intended to resist any effort on the part of plaintiff to include in the

trespass action claims properly handled as no-fault claims. At that time, plaintiff denied defendant's averment, characterized it as a conclusion of law and demanded proof. We do not understand how proof of a conclusion of law is appropriate. We interpret the exchange of pleadings as raising the legal issue as to whether the no-fault claim could lawfully be made in the trespass action. Plaintiff took no steps to have this issue resolved. The pleadings in the 1979 action raise an issue as to whether the action was timely pled. Actually, plaintiff characterizes defendant's pleading of the No-fault Act as an "issue of fact for the jury" and denies the paragraph. Obviously, reference to a statute creates no issue of fact of any kind. The court notes that defendant correctly cited the act. Plaintiff admits that all the no-fault losses were suffered more than two years prior to filing of suit for their recovery. Plaintiff demands proof of the foregoing fact which he has already admitted and denies that the claim is barred by the fact that suit to recover it was filed over two years after the claim arose.

There can be no question that plaintiff's 1979 action is barred by the statute of limitations. The No-fault Act, 40 P.S. §1009.106(c)(1), provides as follows:

"If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. If no-fault benefits have been paid for loss arising otherwise than from

death, an action for further benefits other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits."

Since the no-fault claims arose from an accident which occurred on July 21, 1975, and were known immediately to have been caused by the accident, and since the no-fault claim is agreed not to have extended beyond February 18, 1976, and the 1979 suit was not filed until over three years thereafter, the statute of limitations is clearly applicable and constitutes a defense to the action.

There remains only the question whether, under the circumstances of this case, the no-fault claim may be pursued in the trespass action. We conclude that it may not. The No-fault Act does not admit of any judicial discretion as to what claims are no-fault claims and what claims are trespass claims. 40 P.S. §1009.301 specifically is entitled "Tort Liability." This section abolishes tort liability with reference to injuries arising from "maintenance or use of a motor vehicle" with certain exceptions. Insofar as it is relevant here, the exceptions dovetail into the "basic loss benefits" provided by 40 P.S. §1009.202. Thus, there is no tort liability with respect to the basic loss benefits plaintiff is presently seeking. We do not see how we can create tort liability which does not exist, simply because plaintiff failed to pursue his rights under the No-fault Act.

The result is not one which we are particularly happy to reach. Instead of receiving his basic loss benefits promptly as the No-fault Act intends, plaintiff does not receive them at all. Such a result, however, we believe, has resulted from plaintiff's own inaction. Although we do not believe that plaintiff was obliged to make his no-fault claim on

defendant's forms, we do regard plaintiff's July 7, 1976, submission as inadequate as a no-fault claim. Firstly, it did not purport to be a no-fault claim. Secondly, as defendant appropriately contends, it did not include all the information necessary for defendant to compute its obligation. There is no evidence that plaintiff attempted to follow up when payment was not made. Defendant, we believe, legitimately takes the position that no no-fault claim was ever made of it until the 1979 suit, when it was too late.

Plaintiff's memorandum on these no-fault issues, after arguing that he was not obliged to use defendant's form, sets forth his basic position as follows:

"In light of the foregoing, it would appear entirely unjust for SEPTA to deny Mr. Thomas his PIP benefits when SEPTA failed on three different occasions to forward to Mr. Thomas a PIP form, when Mr. Thomas, on his own, sent SEPTA all the relevant information necessary for them to make a determination of Mr. Thomas' claims, SEPTA has been aware of Mr. Thomas' claim since July 7, 1976 and SEPTA has not paid Mr. Thomas the amounts due and owing to him for approximately three years. Accordingly, SEPTA's conduct can best be described as in complete contravention of the No-Fault Act in which the injured party should receive prompt payment for substantiated claims."

We have already indicated that we believe some of the factual conclusions contained therein are unwarranted. Plaintiff, moreover, has not even attempted to show us why his no-fault claim should be entertained in the 1979 suit despite the statute of limitations, or in the 1976 suit despite the No-fault Act, 40 P.S. §1009.301.

## ORDER

And now, October 8, 1979, upon issues raised by counsel at a pretrial conference and upon receipt of a stipulation of facts and of legal memoranda with respect thereto, it is hereby ordered as follows:

With respect to the 1976 case, Court of Common Pleas, August Term, 1976, no. 1345, plaintiff may not at trial offer evidence with respect to those items of damage which would be cognizable as "No-fault" claims under the law.

With respect to the 1979 case, Court of Common Pleas, April Term, 1979, no. 5408, the complaint in assumpsit is dismissed, the claim having been filed after the expiration of the applicable statute of limitations.